J. H. GREENWOOD v. SOUTHERN RAILWAY COMPANY.

(Filed 24 April, 1907).

**Land—Damages—Surface Water—Overflow—Lower Proprietor.—**
The lower proprietor must receive the surface water which falls
on adjoining higher lands and naturally flows therefrom; in an
action for damages to bottom lands of plaintiff by water flowing
down and across defendant's track and ponding plaintiff's land,
it is error for the Court below to charge the jury that "the
defendant owed to the plaintiff the duty to provide side ditches
sufficient to collect and carry off all surface water that came
down from the land above in its natural flow."

CIVIL ACTION for damages to land by water, tried before
*Ward, J.,* and a jury, at the November Term, 1906, of the
Superior Court of SURRY County.

Action for damages to the bottom lands of the plaintiff
by water overflowing the track of the defendant and pond-
ing thereon. The allegations of negligence are that the
defendant had negligently permitted and allowed the ditch
on its right-of-way on the north side of the track, where
it passed over the plaintiff's land, to remain filled up and
unopened, and the ditch was necessary to divert and carry
off the water flowing onto the right-of-way; that by reason
of the ditch being so filled up and remaining unopened,
water overflowed the track, and ponded itself on his bottom
lands on the south side of the track, cutting washes in the land
and leaving a deposit on the land of sand, gravel and other
substances injurious to the soil. There is no allegation
that the embankment caused the water to be obstructed in
its flow and therefore pond on his upland.

The hill land lying to the north consists of some six or
seven acres that drained into a ravine ending some seventy-
five feet from the track, and the water that had collected in
this ravine from the six or seven acres, both cultivated and

uncultivated, after following the course of the ravine to its end, then flowed into a ditch or gulley which began at the end of the ravine and continued toward the track, and emptied all the water so collected on the right-of-way, about halfway between the outer edge of the right-of-way and the side ditch.

At a point opposite where the water was so emptied onto the right-of-way the land was practically level and formed a water-shed, and it was at this point that the water would flow over the track onto plaintiff's bottom lands to the south. Beginning at this point, the defendant had cut a side ditch, one to the east and one to the west. As originally cut, and when opened, the ditch began at a depth of about twelve inches, and as it continued along the side of the track got deeper and deeper, until, at the point where it emptied into a natural water channel, it was some five or six feet in depth. The evidence disclosed that this side ditch would be filled up with dirt, trash, etc., coming down from plaintiff's land through the ravine and ditch, and when so filled up would remain in that condition for periods of time, long and short. The side ditch was properly and carefully constructed, and, when not filled up by the dirt and trash from plaintiff's land above, provided ample drainage for the right-of-way, but was not sufficient, even when not filled up, to carry off all the water that came down through the ravine in hard rains. Practically all the water that flowed into this side ditch, or onto plaintiff's land south of the road, came from his lands above.

There was testimony to the effect that to cut a ditch sufficient to carry off all the water that came upon the right-of-way it would have to be begun so deep at its beginning that when it reached its output it would be so deep as to seriously impair the usefulness and safety of the road-bed. It was

also in evidence that a ditch could not be made that would not fill up with the dirt and trash brought down from the land above during a hard rain.

There was also evidence tending to show that the plaintiff could, at a reasonable cost, cut a ditch on the south side of the track, and thus prevent the water that broke over the track from sobbing his bottom land.

There was a verdict for the plaintiff. Exception and appeal by the defendant.

*J. F. Hendren* and *W. L. Reece* for plaintiff.
*Manly & Hendren* for defendant.

CLARK, C. J., after stating the case: The exceptions are to the charge only. His Honor erred in instructing the jury that "the defendant owed to the plaintiff the duty to provide side ditches sufficient to collect and carry off all surface water that came down from the land above in its natural flow," and was responsible for any damages the plaintiff sustained by reason of the defendant's ditches being insufficient to carry off the water coming down from above in its natural flow, and refused to charge, as requested, that it did not owe such duty to the plaintiff.

It is settled that the lower proprietor must receive the surface water which falls on adjoining higher lands and naturally flows therefrom. The owner of the upper land may accelerate the flow of the water but cannot divert it. *Porter v. Durham,* 74 N. C., 767. This is true as between the defendant and the plaintiff as owner of the land above the railroad track, and it is equally true as between the defendant and the plaintiff as the owner of the land below the railroad.

The defendant, had it so chosen, might by its side ditches have caught the water coming down from the plaintiff's

land above its track and led it to be discharged at another point—if the owner of the land at such point did not object. But there is no allegation or proof that the defendant has obstructed or diverted the natural flow of the water coming from above and poured it upon the plaintiff's land. The plaintiff has no legal ground for his complaint, which is that the defendant has not kept open side ditches to divert and carry off the water coming down from above, but, permitting the ditches to fill up, has let the water from the plaintiff's land above sweep across its track, unimpeded, and flow in its natural course upon the plaintiff's land below.

